

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 872 | **DATE** | 7/10/2001 |
| **CASE TITLE** | Ee Si Vang, et al vs. John Ashcroft, et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____ . Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry]  Enter Memorandum Opinion and Order.  The court grants the petition for writ of habeas corpus as to Kevin Wedderburn (Doc. 4-1) and orders that the INS schedule a bond hearing, no later than 90 days from the date of this order.  Furthermore, the court also grants the petition for writ of habeas corpus as to Tou Ko Vue, Akaky Yakobashvile, and Juan Mireles (Doc. 4-1) and orders that INS schedule a bond hearing no later than 90 days from the date of this order, for each of them before the immigration judge who is handling their removal proceedings.  Finally, as agreed to by both parties, the court dismisses the petition for writ of habeas corpus as to Ee Si Vang and Mario Solorzano. |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 3 | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JUL 11 2001 | 39 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | 15 | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 7/10/2001 | |
| ETV | courtroom deputy's initials | date mailed notice | |
| | | ETV | |
| | | mailing deputy initials | |

ED-7
FILED FOR DOCKETING
01 JUL 11 AM 7: 53

Date/time received in central Clerk's Office

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DOCKETED

JUL 1 1 2001

| | | |
|---|---|---|
| EE SI VANG, KEVIN WEDDERBURN, JUAN MIRELES, TOU KO VUE, MARIO SOLORZANO, and AKAKY YAKOBASHVILE, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 99 C 872 |
| JOHN ASHCROFT, Attorney General of the United States and BRIAN PERRYMAN, as Chicago District Director of the Immigration and Naturalization Service, | ) ) ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Respondents. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioners Kevin Wedderburn, Tou Ko Vue, Akaky Yakobashvile and Juan Mireles (collectively, "Petitioners") are four lawful permanent residents of the United States against whom the Immigration and Naturalization Service ("INS") has instituted removal proceedings. Petitioners are detained without a possibility of release on bond subject to § 236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). They have petitioned this court for habeas corpus relief, arguing that this mandatory detention violates their substantive and procedural due process rights under the Fifth Amendment to the U.S. Constitution. In addition to this constitutional argument, Wedderburn claims that the INS violated the INA by applying § 1226(c) retroactively. For the reasons stated below, the court

39

grants relief to all four Petitioners and directs the INS to perform an individualized bond determination for any of the Petitioners who remain in custody.

## BACKGROUND

### A. The Statute

On April 24, 1996, Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, which directs automatic mandatory detention for any alien convicted of an "aggravated felony" as that term is defined in 8 U.S.C. § 1101(a)(43) of the INA, and for certain other non-citizens with criminal convictions. 8 U.S.C. § 1252. On September 30, 1996, Congress amended the INA with the IIRIRA. IIRIRA replaced AEDPA's mandatory detention provision, see 8 U.S.C. § 1226(c)(1), and also included "Transition Period Custody Rules" ("TPCRs"), IIRIRA § 303(b)(3), which restored the pre-AEDPA practice of permitting individualized bond determinations in immigration court for individuals who could prove both legal entry into the United States and the fact that they did not present a substantial risk of flight or threat to persons or property. If the alien met these criteria, the immigration court could set bond pending a determination of the alien's removal case. The TPCRs remained in effect from October 9, 1996 to October 8, 1998.

When the TPCRs expired, IIRIRA's mandatory detention provision, § 1226(c)(1), became effective for all criminal aliens. The new provision, entitled "Detention of Criminal Aliens," requires the Attorney General to "take into custody any alien who . . . [is removable as an aggravated felon under § 1227(a)(2)(A)(iii)] . . . when the alien

-2-

is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c)(1).[1] Section 1226(c) further provides that:

> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of title 18, United States Code, that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.

8 U.S.C. § 1226(c)(2).

## B. The Petitioners

As will be demonstrated in this section, Wedderburn, Vue, Yakobashvile, and Mireles have all been convicted of at least one offense which the INS considers to be included within § 1226(c)(1). Not one of these four Petitioners is eligible for the

---

[1]        Section 1226(c)(1) also calls for the mandatory detention of any alien who (a) "after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct . . . .," 8 U.S.C. § 1227(a)(2)(A)(ii); (b) commits certain controlled substances violations set forth in 8 U.S.C. § 1227(a)(2)(B); (c) at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm or destructive device (as defined in section 921(a) of Title 18) in violation of any law," 8 U.S.C. § 1227(a)(2)(C); or (d) "at any time has been convicted (the judgment on such conviction becoming final) of, or has been so convicted of a conspiracy or attempt to violate" certain miscellaneous offenses listed in 8 U.S.C. § 1227(a)(2)(D).

witness protection program, *see* 8 U.S.C. § 1226(c)(2), and therefore each is subject to detention without possibility of bond. Petitioners contend that § 1226(c) is unconstitutional as applied to them, violating both their substantive and procedural due process rights. Petitioners argue that the additional burdens associated with allowing Immigration Judges ("IJs") to make individualized bond determinations are minimal and do not outweigh the risk of erroneously depriving Petitioners of their liberty interest throughout the time during which proceedings against them are pending.

The following are the relevant facts–those regarding Kevin Wedderburn and Juan Mireles, while slightly updated, are taken almost verbatim from *Tiv v. Reno*, No. 99 C 872, 2000 WL 246252, at *2-3 (N.D. Ill. Feb. 24, 2000), and those regarding Tou Ko Vue and Akaky Yakobashvile, who were not added as Petitioners until after the *Tiv* decision, are taken from the Second Amended Petition, filed with this court on March 8, 2000. Neither party has informed the court of recent changes, if any, in the status of Petitioners.

### 1.    Kevin Wedderburn

Wedderburn, a Jamaican national, became a lawful permanent resident of the United States on October 9, 1987, at the age of eleven. (First Am. Pet. ¶ 15; Resp. Mot. to Dismiss, Ex. 7.) Subsequently, Wedderburn's father became a U.S. citizen. (First Am. Pet. ¶ 15.) In 1997, while Wedderburn was incarcerated for a 1995 aggravated criminal sexual assault conviction, the INS charged Wedderburn with removal as an "aggravated felon" under 8 U.S.C. § 1227(a)(2)(A)(iii). (*Id.* ¶ 18; Resp. Mot. to Dismiss,

Ex. 4.) Wedderburn filed an application for a Certificate of Citizenship on grounds that he derived United States citizenship from his father who was naturalized when Wedderburn was under the age of eighteen. (Am. Pet. ¶ 18.) The INS denied Wedderburn's citizenship application. (*Id.* ¶ 19.)

Wedderburn was taken into INS custody upon the completion of his prison term in May 1998. (*Id.* ¶ 20.) The INS then commenced removal proceedings, during which Wedderburn argued that the Immigration Court had no jurisdiction over him because he was entitled to U.S. citizenship. (*Id.* ¶¶ 20-21.) The INS office affirmed the denial of Wedderburn's citizenship application (*Id.* ¶ 19), and on August 19, 1998, the IJ ordered him deported to Jamaica as an aggravated felon. (*Id.* ¶ 21.) The Board of Immigration Appeals ("BIA") affirmed that decision on April 19, 1999. (Resp. Status Report, at 2.) The Seventh Circuit then dismissed Wedderburn's petition to review the BIA's conclusion. *See Wedderburn v. INS*, 215 F.3d 795, 802 (7th Cir. 2000) ("Kevin is not a citizen of the United States, so his petition for review is dismissed."). Neither party has advised the court whether Wedderburn has been deported and the court assumes he remains in custody.

While in INS custody, Wedderburn requested a bond determination. (Am. Pet. ¶ 23.) The IJ granted Wedderburn's request for bond, setting it at $50,000. (*Id.*) Wedderburn's subsequent request for a new bond determination was rejected. (*Id.* ¶ 23.) Unable to meet the bond amount, Wedderburn appealed the amount of bond as prohibitively high. Moreover, he argued that his detention violated the INA because § 1226(c) does not apply to lawful permanent residents who were taken into INS

custody before the expiration of the TPCRs on October 9, 1998. (*Id.* ¶¶ 23, 42.) On May 14, 1999, the BIA dismissed Wedderburn's bond appeal as moot, holding that, pursuant to § 1226(c), the IJ had no jurisdiction to set bond in the first place. (Resp. Status Report ¶ 2.)

### 2. Tou Ko Vue

Vue, whose parents are Laotian, was born in a refugee camp in Thailand, and has been a lawful permanent resident of the United States since 1979. (Second Amended Petition ¶ 26.) Vue was convicted of four offenses in the State of Wisconsin. Although the record does not indicate the date, the INS charged Vue with removability based on three of these offenses: (1) an August 12, 1996 conviction of carrying a concealed weapon (a misdemeanor), resulting in a sentence of two years probation; (2) an October 8, 1997 conviction of operating a vehicle without the owner's consent (a felony), with a 24-month sentence of incarceration; and (3) an October 9, 1998 conviction of child abuse (a felony), with a sentence of three years probation. (*Id.* ¶ 27.) The INS charged Vue as an "aggravated felon" under 8 U.S.C § 1227(a)(2)(A)(iii) for both a "crime of violence" for which the term of imprisonment is at least one year (8 U.S.C. § 1101(a)(43)(F)) and a "theft offense" for which the term of imprisonment is at least one year (8 U.S.C. § 1101(a)(43)(G)). (*Id.* ¶ 28.) These two charges brought him within the reach of § 1226(c)(1). Moreover, INS charged Vue under 8 U.S.C.

§ 1227(a)(2)(C) and 8 U.S.C. § 1227(a)(2)(E), which are not "aggravated felony" grounds.[2] (*Id.*)

On December 3, 1999, an IJ found that Vue's (1) concealed weapon conviction (which was not an "aggravated felony") rendered him removable under § 1227(a)(2)(C); (2) motor vehicle conviction did not qualify as an "aggravated felony" under § 1101(a)(43)(G); and (3) child abuse conviction was an "aggravated felony," and rendered him removable under § 1227(a)(2)(E)(i). The IJ also determined that, because he had been convicted of an "aggravated felony," Vue was statutorily ineligible for Cancellation of Removal under § 1229b(a).

Vue both appealed the IJ's decision that his child abuse conviction constituted an "aggravated felony" under the INA and, correspondingly, the denial of his application for Cancellation of Removal. On July 24, 2000, the BIA determined that, because Vue was only sentenced to three years of probation and no imprisonment for the child abuse conviction, it was not an "aggravated felony." The BIA remanded the record to the IJ to consider Vue's application for Cancellation of Removal. The record does not indicate Vue's current status, nor has the court been advised whether or not the IJ has ruled on Vue's application for Cancellation of Removal.

---

[2]   The distinction between a charge of an aggravated felony and a non-aggravated felony is important because, pursuant to 8 U.S.C. § 1229b(a), an individual who has not been convicted of an aggravated felony may apply for Cancellation of Removal. *See* 8 U.S.C. § 1229b(a). An alien is eligible for Cancellation of Removal if he or she: (1) has been a legal permanent resident for not less than five years; (2) has resided in the United States continuously for seven years after having been admitted in any status; and (3) has not been convicted of an aggravated felony. (*Id.*) According to the record, Vue satisfies the first two of these requirements.

### 3. Akaky Yakobashvile

Yakobashvile is a Georgian native who entered the United States as a refugee in 1979, and later adjusted his status to that of lawful permanent resident. (Second Am. Pet. ¶ 43.) On June 1, 1998, Yakobashvile was found guilty in the Circuit Court of Cook County, Illinois, of possession of a controlled substance and theft and sentenced to two years probation. (*Id.* ¶ 45.) On June 28, 1999, the Circuit Court found Yakobashvile guilty of violating his probation, and re-sentenced him to thirty months in the Illinois Department of Corrections. (*Id.* ¶ 46.)

On January 18, 2000, after serving approximately nine months of his sentence, Yakobashvile was released into INS custody. (*Id.* ¶ 47.) On February 3, 2000, the IJ, pursuant to § 1226(c), denied Yakobashvile's request for release on bond. (*Id.* ¶ 48.) The INS then initiated removal proceedings, charging Yakobashvile with removability as a controlled substance violator under § 1227(a)(2)(B)(i), and as an "aggravated felon" under § 1227(a)(2)(A)(iii) for having been convicted of a "theft offense" for which a term of imprisonment of one year was ordered. (*Id.* ¶ 49.) Yakobashvile claims to be eligible for relief from removal under § 1231(b)(3) because he believes his life or freedom would be in danger should he be removed to Georgia. (*Id.* ¶ 50.)

### 4. Juan Mireles

Mireles, a national of Mexico, entered the United States in 1978, and adjusted his status to that of a lawful permanent resident in 1990. (First Am. Pet. ¶ 24; Resp. Mot. to Dismiss, Ex. 9.) On December 3, 1998, after serving a seven-month period of incarceration in the Wisconsin Department of Corrections following convictions for

possession of a firearm and possession of a controlled substance, Mireles was transferred to INS custody and held without bond pursuant to § 1226(c). (First Am. Pet. ¶¶ 26-27.) The INS then charged Mireles with removability as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii) and for violation of federal firearm laws under 8 U.S.C. § 1227(a)(2)(C). (*Id.* ¶¶ 26-27; Resp. Mot. to Dismiss, Ex. 9.) Mireles twice requested a bond determination before an IJ; both requests were denied pursuant to § 1226(c). (Am. Pet. ¶ 27.)

Mireles remained in INS custody during the pendency of his removal proceedings. (*Id.*) During this time, Mireles applied for Cancellation of Removal. On April 22, 1999, an IJ granted Mireles' application—the IJ determined that Mireles had not been convicted of an "aggravated felony" as such term is defined in the INA. (Resp. Status Report ¶ 3, Group Ex. 2, April 22, 1999 IJ Order, at 2.). Mireles was released from INS custody on April 26, 1999. (Pet. Submission of Additional Evidence Regarding Juan Mireles ¶¶ 2-5).

On May 18, 1999, the INS appealed the IJ's decision, and, because of this appeal, Mireles still must report to the INS each month. (Resp. Status Report ¶ 3; Pet. Submission of Additional Evidence Regarding Juan Mireles ¶¶ 5-6.)

## C.   **Procedural History**

This case began on February 10, 1999, when Sip Vip Honarey Tiv filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The petition was amended on February 18, 1999 to add Petitioners Wedderburn, Mireles and Ee Si Vang. *See* First

Amended Petition. On March 23, 1999, Tiv was granted voluntary dismissal from the case. *See Tiv,* 2000 WL 246252, at *1 n.3.

Attorney General Janet Reno and INS District Director Brian Perryman ("Respondents") then moved to dismiss the petition for lack of subject matter jurisdiction and, alternatively, for failure to state a claim for relief. On February 24, 2000, this court issued a Memorandum Opinion and Order denying Respondents' motion. *See Tiv,* 2000 WL 246252, at *4. In that opinion, this court determined, first, that neither Section 1226(e) nor Section 1252(g) of Title 8 deprived it of subject matter jurisdiction over Petitioners' constitutional claims.[3] *See id.* ("Because Petitioners challenge the constitutionality of the [mandatory detention] provision [as opposed to the application of the provision], this court has subject matter jurisdiction to hear their claims.") (citing *Parra v. Perryman,* 172 F.3d 954, 957 (7th Cir. 1999)). Further, distinguishing *Parra,* the court held that Petitioners had stated a claim for which relief could be granted. The court noted that while "the Seventh Circuit held [in *Parra*] that the mandatory detention provision is constitutional as applied to an alien who has conceded deportability and is merely 'pass[ing] time while waiting for the order to become final,'" *id.* at *5, the *Parra* decision "explicitly left the door open to claims made

---

[3]     Two recent Supreme Court decisions, which emphasize that neither AEDPA nor IIRIRA stripped federal courts of jurisdiction to decide pure questions of law, provide support for this holding. *See I.N.S. v. St. Cyr,* No. 00-767, 2001 WL 703922, at *11 (U.S. June 25, 2001) ("Accordingly, we conclude that habeas jurisdiction under § 2241 was not repealed by AEDPA and IIRIRA."); *Zadvydas v. Davis,* Nos. 99-7791 and 00-38, 2001 WL 720662 (U.S. June 28, 2001) (concluding "that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to *post*-removal detention.") (emphasis added).

-10-

by people who had not yet conceded removal." *Id.* The court was referring, in particular, to the following passage from *Parra*:

> it is easy to imagine cases—for example, claims by persons detained . . . who say they are citizens rather than aliens, who contend that they have not been convicted of one of the felonies that authorizes their removal, or who are detained indefinitely because the nations of which they are citizens will not take them back—in which resort to the Great Writ may be appropriate. Today's case presents none of these possibilities, however, for Parra concedes that he is an alien removable because of his criminal conviction, and Mexico accepts returns of its citizens.

Upon its full consideration of *Parra*, this court concluded that, because none of the Petitioners had conceded deportation, it could not "accept Respondents' assertion that the *Parra* decision [barred the court] from granting relief if appropriate." *Id.,* at *6.

On March 8, 2000, the petition was again amended, adding three new petitioners—Tou Ko Vue, Mario Solorzano, and Akaky Yakobashvile. (*See* Second Amended Petition.) Both parties have since agreed that Vang and Solorzano no longer have live habeas claims.[4] (*See* Petitioners' Response to Respondents' Memorandum in Opposition to the Petition for Habeas Corpus and to Respondents' Motion That Habeas Corpus Be Denied ("Petitioners' Response"), at 2-4.). Thus, as stated at the outset of

---

[4] Vang no longer presents a challenge to § 1226(c) because the INS, unable to deport him to Laos, granted him a "supervised release" under 8 U.S.C. § 1231(a)(3). Solorzano no longer presents a challenge to § 1226(c) because, after the Seventh Circuit found that his conviction for burglary of a motor vehicle was not an "aggravated felony," *see Solorzano-Patlan v. INS*, 207 F.3d 869 (7th Cir. 2000), the IJ received the case on remand, and ordered Solorzano released on a $10,000 bond. Petitioners' Response, at 4. Three weeks later, the bond was reduced to $1,500. Solorzano paid that amount, and was released. *Id.* According to the record, the INS has not appealed the release on bond of either Vang or Solorzano.

this Memorandum Opinion and Order, this case now involves only Petitioners Wedderburn, Vue, Yakobashvile, and Mireles.

## DISCUSSION

### A.    Wedderburn's IIRIRA § 303(b)(3) Argument

The court begins its discussion with a review of Kevin Wedderburn's statutory claim. Wedderburn argues that, regardless of the constitutionality of § 1226(c), he is entitled to an individualized bond hearing because he was released from state custody in May 1998, five months before § 1226(c) took effect, and is therefore subject only to the TPCRs. In their Memorandum in Opposition to the Petition for Habeas Corpus and Motion That it be Denied ("Respondents' Memorandum"), Respondents offered no response to Wedderburn's statutory argument.

As noted earlier, pursuant to § 303(b)(3) of IIRIRA, the TPCRs governed custody determinations from October 9, 1996 until October 8, 1998. Originally, the INS interpreted the expiration of § 303(b)(3) to mean that § 1226(c) would apply to all aliens in INS custody as of October 9, 1998, no matter when they had been released into INS custody. According to such an interpretation, Wedderburn would be subject to § 1226(c) because he was taken into INS custody in May 1998. Several federal courts interpreted § 1226(c) differently, however. *See, e.g., Saucedo-Tellez v. Perryman*, 55 F. Supp. 2d 882, 885 (N.D. Ill. 1999) (citing *Velasquez v. Reno*, 37 F. Supp. 2d 663, 670-72 (D.N.J. 1999)); *Alwaday v. Beebe*, 43 F. Supp. 2d 1130, 1133 (D. Or. 1999) ("Congress provided that the provisions of such section 236(c) shall apply to individuals released after the TPCRs expire. IIRIRA § 303(b)(2). The TPCRs expired October 9,

1998, so § 236(c) applies only to aliens released from incarceration after that date."). Acknowledging these decisions, the INS modified its position, conceding that § 1226(c) applies only to criminal aliens released into INS custody *after* October 8, 1998. *See, e.g., In re Victor Leonardo Rojas*, 23 I. & N. Dec. 117, Interim Decision (BIA) 3451, 2001 WL 537957 (BIA) (May 18, 2001) ("We are not, however, applying section [1226(c)] to aliens who were released from criminal custody prior to the date on which the provision went into effect [October 9, 1998]. We have previously determined that such aliens are beyond the reach of section [1226(c)]."). Based on this INS interpretation, the court concludes that § 1226(c) does not apply to Wedderburn, and that he is entitled to an individualized bond determination.

## B.    Vue's, Yakobashvile's, Mireles' Due Process Claims

The court turns next to the arguments of Vue, Yakobashvile, and Mireles. All three claim that § 1226(c) violates their substantive and procedural due process rights. The court addresses these two claims in turn.

### 1.    Substantive Due Process

The substantive due process guaranty prevents the government from engaging in conduct that "shocks the conscience" or interferes with rights "implicit in the concept of ordered liberty." *Gonzalez-Portillo v. Reno*, No. CIV. A. 00-Z-2080, 2000 WL 33191534, at *6 (D. Colo. Dec. 20, 1999) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952) and *Palko v. Connecticut*, 302 U.S. 319, 325-26 (1937)). Petitioners ask the court to evaluate their substantive due process claim under the compelling interest test outlined in *United States v. Salerno*, 481 U.S. 739 (1987), which held that the

government may not infringe a person's fundamental liberty interests, regardless of the process provided, unless it narrowly tailors the infringement to serve a compelling state interest. 481 U.S. at 748. Respondents have not explicitly contested this proposed standard. Instead, relying almost exclusively on the Seventh Circuit's decision in *Parra*, Respondents argue that Petitioners cannot challenge the constitutionality of § 1226(c) because it does not implicate a fundamental liberty interest. The court assumes, then, that Respondents prefer the more deferential standard, which would uphold the application of § 1226(c) so long as it "rationally advanc[es] some legitimate governmental purpose." *See, e.g., Danesh v. Jenifer*, No. 00-CV-74409-DT, 2001 WL 558233, at *6-7 (E.D. Mich. Mar. 27, 2001) (choosing to employ the compelling interest test set forth in *Salerno* as opposed to the "rational basis" test advocated by the respondents).

In determining the appropriate standard to be applied here, the court again considers *Parra*. In that case, the Seventh Circuit concluded that petitioner's mandatory detention under § 1226(c) did not implicate any liberty interest because "[p]ersons subject to § 1226(c) have forfeited any *legal* entitlement to remain in the United States and have little hope of clemency." 172 F.3d at 958. The fact that Parra was "subject to § 1226(c)," however, was undisputed; he had conceded removability and Mexico, the country of which he was a citizen, would accept his return. Importantly, the *Parra* court indicated, in dictum, that under certain circumstances an individual's removal would not be so inevitable and "resort to the Great Writ may be warranted." 172 F.3d at 957. These circumstances included, but were not limited to, claims made

-14-

by persons "detained under § 1226(c) who say that they are citizens rather than aliens, who contend that they have not been convicted of one of the felonies that authorizes removal, or who are detained indefinitely because the nations of which they are citizens will not take them back." *Id.*

Since *Parra*, a number of federal district courts have been asked to determine the constitutionality of § 1226(c) as applied to petitioners who have not conceded removability. The decisions of these courts have fallen on both sides of the line. Some have found § 1226(c) to be unconstitutional, either explicitly or implicitly distinguishing *Parra*. *See, e.g., Danesh v. Jenifer*, No. 00-CV-74409-DT, 2001 WL 558233, at *6-7 (E.D. Mich. Mar. 27, 2001) (finding that § 1226(c) implicates a fundamental liberty interest and violates both substantive and procedural due process) ("The *Parra* case is distinguishable in that the Seventh Circuit found it significant that the petitioner had conceded all the elements for removal."); *Radoncic v. Zemski*, 121 F. Supp. 2d 814 (E.D. Pa. 2000); *Koita v. Reno*, 113 F. Supp. 2d 737 (M.D. Pa. 2000); *Son Vo v. Greene*, 109 F. Supp. 2d 1281 (D. Colo. 2000); *Welch v. Reno*, 101 F. Supp. 2d 347 (D. Md. 2000); *Van Eeton v. Beebe*, 49 F. Supp. 2d 1186, 1190 (D. Or. 1999); *Bouayad v. Holmes*, 74 F. Supp. 2d 471 (E.D. Pa. 1999); *Danh v. Denmore*, 59 F. Supp. 2d 994, 1001-05 (N.D. Cal. 1999). Others, including a court from this district, have resisted any attempts by petitioners to narrow *Parra*'s holding. *See, e.g., Patel v. Zemski*, No. CIV. A. 01-405, 2001 WL 503431, at *2 (E.D. Pa. May 11, 2001) (finding that § 1226(c) did not violate petitioner's due process even though petitioner had not conceded removability); *Kahn v. Perryman*, No. 00 C 3398, 2000 WL 1053962, at *1-2

(N.D. Ill. Jul. 31, 2000) ("This court is not convinced . . . that the Seventh Circuit's holding in *Parra* is so narrow as to only capture such situations where [the petitioner concedes his status as an aggravated felon and his removability]. Allowing a petitioner . . . to baldly deny his status as an aggravated felon and his removability would render the *Parra* decision a meaningless academic hypothetical.").

The court acknowledges the concern expressed in *Kahn*–an alien subject to removal will presumably now always, upon good counsel, contest his or her removability so as to receive an individualized bond hearing. Where, as here, there is a good faith basis to contest removability, however, the court does not believe *Parra* precludes a bond hearing. In *Kahn*, the petitioner had appealed a state court's denial of his motion to vacate his guilty plea. *Kahn*, 2000 WL 1053962, at *1. The petitioner had filed the motion to vacate five months after his sentencing; according to Illinois Supreme Court Rule 604(d), however, guilty pleas may not be appealed unless a motion to withdraw the plea and vacate judgment is filed within thirty days of the date of sentencing. *Id.*, at *2. The federal court determined that petitioner's appeal was therefore untimely and considered it a futile, "last minute effort to remain in this country," effectively placing the petitioner "in the same position as *Parra* who conceded these points." *Kahn*, 2000 WL 1053962, at *2. Here, on the other hand, the court has been given no reason to doubt that Vue, Yakobashvile, and Mireles are legitimately contesting removability, and consequently finds that each of them has a fundamental liberty interest at stake.

With respect to Vue, the rationale behind such a finding is obvious. Because the BIA concluded that Vue's child abuse conviction was not an "aggravated felony," Vue has satisfied all three eligibility requirements for Cancellation of Removal pursuant to § 1229b and has an application pending. Yakobashvile's removal proceedings are at an earlier stage; nevertheless, he is also, as far as the court can tell, contesting removability on a good faith basis. Yakobashvile believes that, because of his religious and ethnic background, his life and/or freedom would be in danger should he be returned to Georgia. He therefore requests relief from removal pursuant to 8 U.S.C. § 1231(b)(3) ("[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."). Moreover, Respondent suggests that Yakobashvile will likely argue that he is not removable as an aggravated felon because the crimes for which he has been convicted are not aggravated felonies under the INA. Respondents' Memorandum, at 10. As Vue's case illustrates, such an argument is by no means futile and Respondent has not offered the court any facts to indicate that it may be so in this particular case.

Mireles may have the strongest of the three cases.[5] His application for Cancellation of Removal has already been granted, and he was therefore released from INS custody. The INS, however, has appealed both the IJ's decision that Mireles has not been convicted of an aggravated felony and the IJ's consequent decision to release Mireles from INS custody. In other words, the INS claims that Mireles, who very well may not be removed at all, should be back in INS custody and subject to mandatory detention under § 1226(c).

Having found that § 1226(c) implicates a fundamental liberty interest as applied to Vue, Yakobashvile, and Mireles, the court proceeds to apply the compelling interest test set forth in *Salerno*. As the court noted in *Martinez v. Greene*, 28 F. Supp. 2d 1275 (D. Colo. 1998):

> In the context of immigration statutes and regulations, whether the infringement is narrowly tailored to serve a compelling governmental interest is determined by evaluating whether the infringement on liberty:

---

[5]     A threshold issue with respect to Mireles is whether he is "in custody" for purposes of receiving habeas corpus relief. *See Vargas v. Swan*, 854 F.2d 1028 (7th Cir. 1988). In *Tiv*, this court noted that, despite being released, Mireles is still required to report his address and employment status to the INS on a monthly basis. 2000 WL 246252, at *4. The court further explained that, "absent any argument to the contrary from INS, the court will assume that these restraints, coupled with the fact that the INS is still charging him as removable, supports the conclusion that Mireles remains 'in custody.'" *Id.* In their Memorandum, filed shortly after the *Tiv* opinion, Respondents merely stated, without support, that Mireles is no longer "in custody." Absent any authority for this "argument," however, the court adheres to its earlier conclusion. *See Harts v. Indiana*, 732 F.2d 95, 96 (7th Cir. 1984) ("[W]e have held that a prisoner, free on bail pending final disposition of his case, satisfied the 'in custody' requirement. Similarly, we have held that probation and parole may be 'custody' for habeas corpus purposes."); *Arias v. Rogers*, 676 F.2d 1139, 1142 (7th Cir. 1982) (evaluating the merits of petitioners' habeas claims despite fact that petitioners were free on bond).

-18-

(1) is impermissible punishment or permissible regulation; and (2) is excessive in relation to the regulatory goal Congress sought to achieve.

28 F. Supp. 2d at 1282.[6] The government clearly satisfies the first of these two elements—mandatory detention is regulatory, not punitive, in nature. In fact, Congress has stated several reasons for the mandatory detention provisions that are unrelated to punishment: (1) protecting the public from potentially dangerous criminal aliens; (2) preventing aliens from absconding during removal proceedings; (3) correcting procedures under which twenty percent of criminal aliens released on bond did not report for deportation hearings; and (4) restoring public faith in the immigration system. *See* S. Rep. No. 104-48 (*cited in Rogowski v. Reno,* 94 F. Supp. 2d 177, 184 (D. Conn. 1999). These are no doubt legitimate regulatory goals.

Respondents, nevertheless, have failed to satisfy the second element of the *Salerno* test because, while legitimate, the goals outlined by Congress do not justify the infringement of Petitioners' fundamental rights. The courts noted as much in *Danesh* and *Van Eeton.* In *Danesh,* the court wrote:

> Under § 1226(c), there is no hearing regarding bond. The mandatory detention provision under § 1226(c) is not narrowly tailored to meet the valid legislative goals because it is excessive in relation to the regulatory goal Congress sought to achieve. Giving the Attorney General discretion

---

[6] The court recognizes that, in *Parra,* the Seventh Circuit noted that it found *Martinez v. Greene* "unpersuasive." *Parra,* 172 F.3d at 958. In *Martinez,* as in this case, the petitioners had not conceded removability at the time they filed their habeas corpus petitions. The *Martinez* court, however, did not discuss whether each petitioner's challenge to removability presented any hope of success. Instead, the court decided that, regardless of the particular circumstances, § 1226(c) is unconstitutional. *Parra* rejects that very broad holding but, as discussed above, does not rule out the possibility that § 1226(c) may be unconstitutional in certain circumstances.

> regarding bond and allowing a hearing on the matter would not defeat
> Congress' regulatory goal to limit absconding or committing further
> criminal acts on the part of the individual subject to the Act.

2001 WL 558233, at *6 (internal citations omitted). And, in *Van Eeton*, the court

concluded that:

> section 1226(c)(1) fails the compelling interest test. The government does
> have a compelling interest in preventing aliens with felony convictions
> from absconding or committing further crimes. . . . Given the importance
> of the individual liberty interest at stake, however, § 1226(c) sweeps too
> broadly. Denying individual bond hearings imputes a purpose to injure
> society to all detained aliens with aggravated felony convictions,
> regardless of the circumstances of the individual case. Individual bond
> hearings before an immigration judge would serve the government
> interest without violating due process rights.

49 F. Supp. 2d at 1190. In *Parra*, the Seventh Circuit stressed that those subject to

§ 1226(c) had practically no hope of clemency. That was true of the petitioner in *Parra*,

who had conceded removability. 172 F.3d at 958. In *Kahn*, the court, relying on *Parra*,

concluded that the petitioner did not offer a tenable argument that he was not an

aggravated felon subject to mandatory detention; it therefore found a fundamental

liberty interest to be lacking. 2000 WL 1053962, at *2. Here, however, Vue,

Yakobashvile, and Mireles have all demonstrated at least some hope that they will not

be removed, and, while they do not have an absolute right to remain at liberty while

their removal proceedings are pending, the court concludes that due process under

these circumstances requires an individualized evaluation to determine whether

continued detention is necessary to prevent a risk of flight or a threat to the

community.

## 2.    Procedural Due Process

The analysis of Petitioners' procedural due process claim largely overlaps with the substantive due process analysis.   Procedural due process requires that government action which deprives a person of life, liberty or property be implemented in a fair manner.  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  There are three general factors that courts weigh when determining whether the process at issue is constitutional: (1) the private interest affected by the official actions; (2) the risk of an erroneous deprivation of the interest and the value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the fiscal and administrative burdens the additional or substitute procedural requirements would impose. *Id.*, at 335.

The court has already acknowledged the government's interest in, *inter alia,* preventing aliens from absconding during removal proceedings.  Where there is a good faith basis for objecting to removal, however, the regulatory goals do not outweigh the Petitioners' significant interest–"the right to be free of indefinite and possible long-term detention pending a deportability determination." *Van Eeton*, 49 F. Supp. 2d at 1190 (citing *Martinez*, 28 F. Supp. 2d at 1283).  As it did with Petitioners' substantive due process claim, then, the court concludes that "due process requires an individualized consideration of whether each alien detained pursuant to § 1226(c)(1) represents a flight risk and a threat to the community's safety." *Id.*

## CONCLUSION

For the foregoing reasons, this court grants the petition for writ of habeas corpus as to Kevin Wedderburn (Doc. 4-1) and orders that the INS schedule a bond hearing, no later than 90 days from the date of this order. The government has made no specific objection to Wedderburn's request that such a determination be made by a different immigration judge than the one who has been handling Wedderburn's removal proceedings, and the court so orders. Furthermore, the court also grants the petition for writ of habeas corpus as to Tou Ko Vue, Akaky Yakobashvile, and Juan Mireles (Doc. 4-1) and orders that INS schedule a bond hearing no later than 90 days from the date of this order, for each of them before the immigration judge who is handling their removal proceedings. Finally, as agreed to by both parties, the court dismisses the petition for writ of habeas corpus as to Ee Si Vang and Mario Solorzano.

ENTER:

Dated: July 10, 2001

REBECCA R. PALLMEYER
United States District Judge